At this time we'll hear Joseph v. United Technologies. Good morning. Good morning, Your Honors. My name is Kenneth Fowtry. I represent the plaintiff in this case. I think I've reserved three minutes for rebuttal. Your Honors, I think what I want to address here is initially, I think the facts of the case are laid out in the brief. Very quickly, Mr. Josephs works for United Technologies. He began at Sikorsky and worked there from 2000 to 2012, except for about a one-year period where he was loaned over to United Technologies in Pratt & Whitney in order to work at the other entity, and then returned back to Sikorsky Aircraft. Mr. Joseph has a, and you can tell from our complaint and from our affidavits, a number of complaints about the treatment he received both at Sikorsky and at United Technologies. So at this point, Your Honor, then our main argument is, one of our first arguments is, the issue of, in the granting of this motion for summary judgment, whether there were genuine and material facts for determination by the trier of fact. We believe there were in terms of the continuing violation doctrine. Now it's important in this case because the conduct that we complain of occurred both at Sikorsky and at Pratt & Whitney, the other entity that was part of- But was it at Pratt & Whitney? My understanding of this, of the record, is that he did indeed have some evidence of discrimination at Sikorsky, but he couldn't sue on that because he didn't timely bring an administrative proceeding to exhaust his remedies. But then that, my understanding that he doesn't have anything during the time at Pratt & Whitney, so that, the argument that there was a continuing violation, there was nothing for it to continue into- Well, I do agree that in Sikorsky, I think we have some evidence of some discrimination. Our argument is that the conduct that occurred at United Technologies was essentially a continuation of the conduct below. And where he ties it together- What conduct below? The conduct at Sikorsky? Conduct at Sikorsky. How? I mean, I'll note that not only do I ask you how, but your client conceded that on, at his deposition, that on the termination from Pratt & Whitney in the hostile environment, certainly at that location, he had no evidence of race discrimination. And, Your Honor, I think the Court has to review the entire record in order to determine what Mr. Joseph- Tell us what, what there is. What Mr.- Sure. What's it into Pratt & Whitney? Sure. What happened at Pratt & Whitney was, from our position, a continuation of the conduct below. He had the problem with the computer system, which there had been somebody apparently entering on his segregated computer system. In fact, we actually had the number, a code number of the person entering. That behavior took place at Sikorsky and took place at Pratt & Whitney. Our belief is, is that is part of this, part and parcel of this behavior, which was designed to now push Mr. Joseph out of the company. He ends up terminating, terminating it, being terminated at Pratt & Whitney because of a number of things that happened because of the behavior at Sikorsky and the continued behavior here. He also had with his employer here, of course, there was the claim for the hostile work environment, but he was having, he was being accused of being a thief, being accused of being dishonest and untrustworthy by Unite Technology. Absolutely, it's not a violation of any of these statutes. It's got to be motivated by a prohibited discrimination. And where is the evidence of the prohibited discrimination apart from after the, after the, the, the one individual at Sikorsky as to whom there was evidence of discrimination? What is there afterwards? Well, inferentially, I think based on circumstantial evidence, the behavior was basically a continuation of the harassment of Mr. Joseph. It began at Sikorsky with the racial, and there was no question that the racial statements were made at Sikorsky. And then he gets to Pratt & Whitney and he transfers to Pratt & Whitney in order to get away from what he perceived to be this abusive behavior. And he gets there and all of a sudden there's a string of abusive behaviors. I, I can't, I'm going to admit that there wasn't a racial reference when he got to Pratt & Whitney. There, there wasn't, but there was a continuing harassment of almost as a persona non grata when he got there in that he already was, was labeled in a particular way. And at that point it leads to his, his termination. And the termination based on him not being back at work. Circumstantial evidence is perfectly good evidence. In many cases, it's better than, than eyewitness testimony, but there's got to be some. And what's the circumstantial evidence that shows that any, any contretemps he encountered at Pratt & Whitney were attributable to race discrimination? Where we think the circumstantial evidence lies is that it's, it's a continuation of an abusive behavior on somebody that had already been, the issue of the racial connection had already been connected. And so what occurs at, at United Technology is essentially the cru de ga, qua, I'm sorry, I can't pronounce it, the, the, the final, the final step in, in causing him to leave the company one way or the other. And that's when he becomes, he starts suffering with his complaints of headaches and illnesses and the like and believing there was an energy source. Yes. Well, what is this energy source, this beam that's causing him headaches and why are people doing this to him because of his race or age? First of all, let me approach it directly and everybody can sit on this bench and say, this guy must be crazy. What's going on? I wouldn't say that, but I would say that he's complaining of headaches caused by a, an energy beam. He is. And he believed, and, and, and I, he had the symptoms and he works in a place where there are various instruments using high energy involved. And he believed that there was not, not so, you know, that not so much that there was a targeting, but that it was occurring in that area. He then makes the complaints about it. If he wasn't targeted, then what does this have to do? Because he then goes the next step and he makes the complaints about it. And those complaints really weren't taken seriously. They did a rudimentary investigation and determined, I'm assuming, believing that the guy was, was a little bit. Why do you say they weren't taken seriously if they did an investigation to find out if there were energy producing beams that were causing him headaches? Problems continued throughout. It really didn't resolve any of the problems. And he hadn't had any of those headaches before. Why do you say they weren't taken seriously because of his race? No, what we have at Pratt & Whitney is simply... The only evidence, if I understand it, of racial bias is the Sikorsky supervisor's remark that he wasn't going, likely to get a promotion because they had no black managers. That's right. But he has the concern about whether his salary is on a par with that of other workers. But I don't see where there's any evidence that any of the facts that you're now describing about his complaining and how that leads to then his termination, all that, how any of that is informed by his race. What am I missing? Inferentially, because the discrimination took place at Sikorsky and he moved within  But what discrimination? That somebody told him he wasn't going to get a promotion that he got? No, we disagree that he got that promotion. Now, what occurred was he got the response of... But is that the evidence? Is that the evidence from which everything else that happens to him that you are alleging in this complaint should be viewed as based on race discrimination? That remark by the supervisor. Because it's a continuation of negative conduct on the part of United Technologies that essentially continues to put him in a position that he was put in because of the racial issues. And I mean, if I can just address the promotion, he wasn't promoted. He was given the responsibilities of the promotion, but he was not given any increase in not only his salary and not only being at just another level up to get seniority, but it was also an issue that they never addressed. The salary issue at all. So it was congratulations, you've been promoted and we're not paying you. Now pointed out, you failed to exhaust administrative remedies on. That may be correct. Yes, Your Honor. But we believe that continuing conduct, I'm watching my time, at United Technologies, in fact, was simply the continued abuse of Mr. Joseph had already suffered from the racial discrimination that occurred at Sikorsky. I mean, your argument might have more merit if the adverse stuff that he suffered at Sikorsky was shown to be motivated by pervasive racial discrimination. But he just had one supervisor's remark at Sikorsky. There was no evidence of anything racial on the part of anyone other than that one supervisor. His affidavit does state that he had, that there were racial statements made in day to day conversations and problems along the way. So he did raise that in his affidavit that at various times when he was being, or he perceived being disciplined in some way that racially charged statements were being made to him, there were no specific statements included. But if you look at his affidavit, he does indicate that. He alleges that conclusorily. He does allege that. He doesn't, there's not a direct quote of what words were used. You've reserved rebuttal? I have reserved freedom. Thank you, Your Honor. Good morning. May it please the Court. My name is Eric Sussman. I'm Dave Pitney in Hartford. We represent Sikorsky and Pratt & Whitney. The plaintiff was laid off from Pratt & Whitney in August of 2013 in a reduction in force after failing to report to work for several months. He's sued, in addition to suing Pratt & Whitney, of course, he has sued his prior employer, Sikorsky, and he has no evidence of any race discrimination or age discrimination by either defendant. With regard to the continuing violation argument that the plaintiff, that the appellant articulates, the continuing violation does not save him on the failure, the alleged failure to promote, because the failure... You're saying he has no evidence of racial discrimination at Sikorsky? The only thing that he can point to is he points to the alleged comment by Donald Rogers that he wouldn't likely get a promotion that he ultimately got, because there weren't any black managers in the department. At best, he can show that that is... Is that evidence of race discrimination? At best, it's a stray remark, Your Honor, and so it's not enough to overcome summary judgment. In an effort to overcome the problem that he has on the promotion being a discreet act, which it is, he tries in his reply brief to re-characterize the failure to promote as a failure to increase his pay in 2009. And I heard Mr. Votri say that Sikorsky did fail to promote him. In his reply brief, he indicates on page 11, Sikorsky did not fail to promote Mr. Joseph. I think what he's really saying and what he says in his reply brief is that he tries to re-characterize Sikorsky's alleged failure to promote as a failure to increase his pay in 2009, but that, too, is a discreet act. From my understanding, you want us to affirm, with respect to Sikorsky, on the ground that he fails to state a claim, not on the ground that he failed to exhaust administrative remedies in a timely manner? Well, um... Because that's what you're arguing to us, that he fails to state a claim. Well, we're arguing, Your Honor, that he doesn't have any evidence to support a continuing violation. And so, with regard to the... He also has this other, the hostile work environment claim, and we think that the district court properly found that there was no evidence to support... He fails to state a continuing claim because he fails to state a claim ab initio. Is that your theory? That's certainly... Well, he... I mean, it seems like the hardest argument for you to succeed on, rather than the best, but I just want to make sure I understand it. Well, I think all we're suggesting, Your Honor, and it's not a failure to state a claim because it's not a motion to dismiss, and it's a motion for summary judgment. So what we're really saying, Your Honor, is he doesn't have any evidence to support a continuing course of conduct, and so he doesn't get past the statute of limitations with regard to Sikorsky. You've been arguing more than that he doesn't have evidence to support a continuing course of conduct. You've been arguing, I don't know why, but you've been arguing that he doesn't have any evidence to support the adverse actions at Sikorsky, a much more ambitious argument and one that's quite difficult to defend in view of the fact that he was told by his supervisor, you're not going to get promoted because we don't do black supervisors. Your Honor, all we're suggesting is that his claims with respect to Sikorsky are barred by the statute of limitations, and he doesn't have evidence of a continuing course of conduct. That's all you're suggesting now, so you're retracting the exaggerated, overstated arguments you were making before. That's fine. That's what I would do in your position. I didn't mean to overstate the argument, so if that's the way it came across, then my apologies. So you're relying on the failure to exhaust administrative remedies with respect to Sikorsky, and you're relying on the absence of evidence of a continuing violation with respect to Pratt & Whitney. That is correct. With regard to his claims against Pratt & Whitney, well, with regard to his claims against Sikorsky, there is no evidence of race discrimination and there is no evidence or facts to support that the reason he didn't get the so-called promotion at Sikorsky was because of his age or race. What he claims is that the HR person at the time, Christine Cassina, denied him a labor grade increase at the time that he applied for that position. Again, he admits that he has no facts or evidence that the reason Ms. Cassina didn't promote him to an L4 was because of his age. And the only evidence that he points to with regard to race is what he now points to as Mr. Rogers' alleged statement, which is at best a stray remark. Mr. Rogers was not a decision maker. It is undisputed that Mr. Van Leeuwen was the one who made the decision with regard to that position. His claims against Pratt & Whitney similarly fail because he has no evidence that the termination was discriminatory. I think we've heard that from Mr. Joseph in his deposition transcript. It's in the 56A statement. I think Mr. Votri acknowledged that as well. He admits he has no evidence of race or age. With regard to his age claim, the decision makers at Pratt & Whitney, Mr. Lamberti, Mr. Celebrity, and Mr. Morford, were all older than the plaintiff, which creates an inference against age discrimination. I recognize that that's not dispositive. But in addition, Mr. Lamberti was involved in the decision to hire Mr. Joseph in the first place. With regard to the race claim, he doesn't even claim that the decision makers involved in the layoff, Mr. Lamberti, Mr. Celebrity, and Mr. Morford, discriminated against him. And indeed, there is no evidence of race discrimination, nor does he have any evidence of pretext. The plaintiff admits that it wasn't acceptable for him simply to be out of work without approval. He has no documentary evidence, no e-mails, nothing of a documentary nature. No evidence of any comments or conduct during his employment at Pratt & Whitney to evidence age discrimination. He doesn't have any statistical evidence. He doesn't have any evidence that similarly situated white co-workers were treated more favorably after failing to work, to report to work for months without approval. He never complained to anybody at the company about race or age discrimination. And any evidence that he has cited, computer problems, and the accusations that he was a thief, or words to that effect, lack any nexus to his eventual layoff from Pratt & Whitney. And without a nexus, his claim fails as a matter of law. What he's really saying is that he hopes that a jury will forgive his lack of evidence and find in his favor. But the lack of evidence is precisely what precludes any reasonable jury from drawing a rational inference of race or age discrimination in the first instance. His claims of hostile work environment, his hostile work environment claims fail against both defendants also, because again, there is no evidence of severe or pervasive discriminatory treatment, and certainly no evidence of severe or pervasive discriminatory treatment based on race or based on age. The computer problems, there's no link between the alleged computer problems and his race or his age. And indeed, the plaintiff admitted in his deposition that computer issues were common at Sikorsky and at Pratt & Whitney. And in fact, when he submitted a complaint to UTC through its ombudsman program about his computer issues, you'll see, and this is at SA 120 through 121, he didn't make any mention whatsoever of race or of age. There is an allegation, and Mr. Votri alluded to this in his remarks, that there were race-related remarks, and it's alluded to in the plaintiff's affidavit. He talks about what he alleges are racial epithets. He was asked about that in his deposition, and indeed, the record reflects that there were no racial epithets whatsoever. What the plaintiff is saying and what the evidence reveals is that Mr. Rogers allegedly called him lazy and slacker. That's what he is calling a racial epithet. Again, there's nothing racial about those words on their face, nor does the plaintiff have any evidence that Mr. Rogers, or anybody else for that matter, made any statements like that because of the plaintiff's race, assuming that they were made at all. There's also this allegation about the energy beam. Again, there's no allegation that that happened at all, and certainly no evidence that was connected with any unlawful harassment. Even if there were severe or pervasive discriminatory treatment, which we don't think that there was, the hostile work environment claim fails for the additional reason that there's no basis to impute liability to Sikorsky because the plaintiff can't prove that Sikorsky or Pratt & Whitney acted negligently. He admits that he knew the companies had harassment-free workplace policies. He didn't report any alleged race discrimination or age discrimination whatsoever. And for those reasons, sorry, Your Honor. Thank you very much. Thank you. We'll hear Mr. Votry. In looking at this case, the line in which we think creates liability for us, and why I think we should have survived an unsummary judgment, is the continuous activity exception, and let me tell you why. What's happened here is at Sikorsky, Mr. Joseph is an intelligent software engineer. He was looking for a promotion, and he wanted that promotion. He then has his supervisor explain to him that because of his race, because he's black, there are no black managers there, and the suggestion in that comment was, is you're not going to get past that ceiling in some way. And that happened, and that is in the evidence. There is evidence of that. Mr. Joseph doesn't give up. Mr. Joseph goes, and he fights it. And he gets this so-called promotion nine, ten months later, where he's not really promoted. He just gets some more duties to perform. One could even say that Mr. Joseph may have caused some trouble. He rattled the gauges a little bit to try to see where he can get, and he was trying hard to do it. He's a decent man and a hardworking guy. He then runs into more and more difficulty with the supervisors he's dealing with, and then ultimately goes over to Pratt & Whitney, another branch of United Technologies, and then faces a very difficult situation where he's called a thief, and he has these problems. Does it arise from Mr. Joseph being, maybe fighting back against the system, or does it arise because it's a continuation of the conduct that occurred at Sikorsky? He was marked at some point. Our position is, when he gets to United Technology, he's trying to make a life for himself. He, at that point, didn't care that he didn't have the promotion. Look, you're on summary judgment. Certainly, if you could show that the person who, you know, made trouble for him at Pratt & Whitney had had communications with the person who made this argument, but as I understand it, you induced no such evidence. Is that right? Well, there's no direct evidence of it. But this is what discovery is for. You get to depose these people and ask them about contacts with one another, or you get to look at files or something, but you can't just come in here and ask us to assume that the people at Pratt & Whitney knew that he had caused trouble at Sikorsky without any evidence. What we have is circumstantially what occurred at Pratt & Whitney. One is not going to get – I mean, in a rare case, are you going to get admissions from somebody saying, by the way, I called up and let's do Mr. Joseph in? It's not going to – we're not going to reach that level of evidence in most of these cases. It is circumstantial. But he does get there, and in a surprising way, has a number of accusatory-type problems occur where he's being accused of being dishonest. He loses, for example, his security clearance, which was key to his job because he worked in the defense industry, because he worked on helicopters for Sikorsky and jet engines for Pratt & Whitney, all in the software that controls it. So he became, for example, much less employable because he could no longer get a job where he expected to be working. So I think circumstantially it does connect, and I think it's the continuous conduct exception that carries it. Thank you. Thank you, Your Honor. Thank you. Your Honors. We'll reserve decision.